UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERI BERNARD JOHNSON,

          Petitioner,

                              CASE NO. 2:20-CV-12165

   v.                          HON.  GEORGE CARAM STEEH

RANDEE REWERTS,

          Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING THE MOTION TO APPOINT COUNSEL (ECF No. 15), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Teri Bernard Johnson, ("Petitioner"), incarcerated at the Carson City Correctional Facility at Carson City, Michigan, filed a *pro se* habeas corpus petition challenging his state convictions for assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, carrying a concealed weapon with unlawful intent, Mich. Comp. Laws § 750.226, and possession of a firearm in the commission of a felony, second offense, Mich. Comp. Laws § 750.227b(1).  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

# I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County

Circuit Court, in which he was tried jointly with two co-defendants, Lorenzo

Brown and Waddell Burney.  This Court recites verbatim the relevant facts

relied upon by the Michigan Court of Appeals, which are presumed correct

on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See, e.g., Wagner v.*

*Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants' convictions arise from the nonfatal shooting of
> Jamil Dismuke outside the Sam D Liquor Store in Detroit. On
> the night of November 22, 2014, Dismuke was walking toward
> the door of the store. His brother, Demond Davis, was outside
> the store, and their uncle, Richard Davis, was inside the store.
> A witness, Ashlee Kennedy, was also outside the store.
> Witnesses heard a barrage of gunshots, one of which struck
> Dismuke in the leg, causing him to fall in the store parking lot.
> After Richard pulled Demond inside the store, one of the
> defendants, allegedly Lorenzo Brown, came across the street,
> stood over Dismuke, and shot him in the head at close range.
> Richard and Demond observed this shooting on a security
> camera monitor inside the store. Dismuke recovered from the
> shooting, but sustained some degree of mental impairment.
>
> The prosecution's theory at trial was that all three defendants
> were involved in firing gunshots at Dismuke, and that it was
> defendant Brown who shot Dismuke in the head. Kennedy
> initially told the police that she did not know the identities of the
> shooters, but she later testified pursuant to an investigative
> subpoena that she knew the shooters by their nicknames. She
> identified Brown as the person who shot Dismuke in the head.
> At trial, Richard testified that he saw the three defendants at the
> corner outside the store before the shooting started. He did not
> know who shot Dismuke in the head. Demond identified the
> defendants as the persons being at the scene. He identified

Brown as the person who shot Dismuke in the head based on his observations of the shooter's clothing on the store security video. Dismuke identified Brown as the person who shot him in the head, and identified Johnson and Burney as the other individuals who shot at him.

Defendants were tried jointly before a single jury. Before trial, the trial court denied Burney's motion for a separate trial. The primary factual issue at trial was the credibility of Kennedy, Richard Davis, and Demond Davis. The prosecutor introduced the video footage from the store surveillance cameras, but the officer who obtained a copy of the video footage from the store inadvertently failed to capture approximately one minute of feed from one of the cameras. This was the camera that would have recorded the point-blank shooting of Dismuke. The jury convicted all three defendants of the weapons charges. In addition, it convicted Brown of assault with intent to commit murder, but convicted Burney and Johnson of the lesser offense of assault with intent to do great bodily harm less than murder.

*People v. Brown*, No. 327736, 2016 WL 6992194, at *1–2 (Mich. Ct. App. Nov. 29, 2016).

The Michigan Court of Appeals affirmed petitioner's conviction, with the exception of his public trial claim. *Id.* As to the public-trial claim, the court acknowledged that a courtroom closure had occurred but stated that it was not possible from the record before it to determine whether the closure was total or partial. *Id.,* * 5. The Michigan Court of Appeals also noted that the trial court had not made any findings to support the closure. *Id.* The Michigan Court of Appeals remanded the case to the trial court to "mak[e] appropriate findings on the record regarding the extent of the

closure (i.e., whether it involved all or only some of the spectators), whether that closure was tailored to protect the interests of avoiding witness intimidation, and whether any alternatives were available." *Id.*

On remand, the trial court followed the procedure outlined by the state appellate court, finding that the closure was partial, that it was done to protect a witness, that it was no broader than necessary, and that there was no alternative to the partial closure. (ECF No. 8-11, PageID. 1223-33).

The Michigan Court of Appeals after remand held that "the closing of the courtroom was partial and did not violate any of the defendants' rights to a public trial," and affirmed petitioner's convictions and sentences. *People v. Brown* (After Remand), No. 327736, 2017 WL 1367178, at *1, *4, *8 (Mich. Ct. App. Apr. 13, 2017).

On September 12, 2017, the Michigan Supreme Court denied petitioner leave to appeal. *People v. Johnson*, 501 Mich. 860, 901 N.W.2d 384 (2017).

Petitioner filed his post-conviction motion for relief from judgment with the state trial court on November 19, 2018, which the trial court denied. *People v. Johnson,* No. 15-000469-01-FC (Wayne Cty. Cir.Ct. Mar. 25, 2019)(ECF No. 8-13).  After the Michigan Court of Appeals denied petitioner leave to appeal, *People v. Johnson,* No. 349129 (Mich.Ct.App.

- 4 -

July 22, 2019), post-conviction review of petitioner's case ended in the Michigan courts on June 30, 2020, when the Michigan Supreme Court denied petitioner leave to appeal. *People v. Johnson*, 505 Mich. 1132, 944 N.W.2d 689 (2020).

Petitioner's original habeas petition was received and filed by this Court on July 29, 2020. (ECF No. 1). Petitioner raised four claims in his initial petition.  Petitioner also filed a supplemental brief on November 12, 2020, which again raised these same four claims. (ECF No. 10).

Respondent filed an answer, which was essentially a motion to dismiss the petition on the ground that petitioner's application for writ of habeas corpus was barred by the statute of limitations found in 28 U.S.C. § 2244(d)(1).  The upshot of respondent's motion was that the statute of limitations expired on July 24, 2020 and that the habeas petition was untimely because it was filed five days later on July 29, 2020. Petitioner filed a motion explaining the delay and a reply to the motion to dismiss. Petitioner presented proof that he had handed his petition to prison authorities to mail to this Court on July 24, 2020, the last day of the limitations period.  Relying on the prison mailbox rule, this Court's predecessor, Judge Arthur J. Tarnow found that the petition was timely filed because petitioner submitted an Expedited Legal Mail form which showed

that the petition was given to prison officials to mail to this Court on July 24, 2020. *Johnson v. Rewerts*, No. 2:20-CV-12165, 2021 WL 4169793, at * 2 (E.D. Mich. Sept. 14, 2021). Judge Tarnow denied the motion to dismiss. *Id.* [1] Judge Tarnow granted petitioner's motion for an extension of time to file an amended petition and also ordered respondent to file an answer to the amended petition. *Id.* Petitioner filed an amended petition for writ of habeas corpus on December 1, 2021. (ECF No. 16).

Petitioner seeks habeas relief in his amended petition on nine grounds:

I.  The trial court violated defendant's right to a public trial by removing spectators from the courtroom.

II.  There was insufficient evidence of defendant's intent to do great bodily harm to support his conviction of assault with intent to do great bodily harm less than murder.

III.  The prosecutor knowingly introduced the perjured testimony of witnesses Ashlee Kennedy, Jamil Dismuke, and Demond Davis.

IV.  Defendant's constitutional right to be present during the proceedings was violated where he was not present at an April 14, 2015 final conference and where he was absent during trial when the trial court and the attorneys

---

[1] Judge Tarnow noted in passing that had the petition been untimely, he would have equitably tolled the limitations period due to impediments petitioner faced due to the prison lockdowns and law library shutdowns that were implemented by prison authorities to fight the Coronavirus Pandemic which was in full force at the time that petitioner filed his habeas application. *Johnson v. Rewerts*, 2021 WL 4169793, at * 2.

discussed Demond Davis's departure from the witness stand.

V.     The trial court's ruling excluding Kennedy's first written statement violated his right to present a defense.

VI.    Defendant was denied his right to a fair trial and impartial jury when evidence of his prior convictions was used in its finding of guilt or innocence, when it was provided with a copy of his felony information, which listed his prior convictions.

VII.   The trial court erred in sentencing defendant as a fourth offense habitual offender because the prosecutor failed to satisfy the requirements set forth in MCL 769.13, requiring that he not only file a habitual offender notice and serve defendant with the same within 21 days after defendant's arraignment on the information but also file proof of service, MCL 769.13(2), in order to establish that defendant received notice timely.

VIII.  The trial court abused its discretion and denied defendant a fair trial through improper remarks and questioning of a key witness which gave the appearance of advocacy for the prosecution.

IX.    Defendant was denied the effective assistance of appellate counsel on direct appeal when appellate counsel failed to (1) adequately investigate and present on remand the testimony of codefendant Burney's mother in support of his public trial violation. As a result, both the trial court and the court of appeals were misled into believing the closure was partial; and (2) for failing to previously raise trial counsel's ineffectiveness and the issues herein.

Respondent filed an answer to the amended petition. (ECF No. 17).

Petitioner filed a reply brief. (ECF No. 19).

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim
>
> > (1) resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established
> > Federal law, as determined by the Supreme Court of
> > the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law or if the state court decides a case

differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a

prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## III. DISCUSSION

### A. Petitioner's second through fifth claims are barred by the statute of limitations.

Respondent contends that petitioner's first five claims, which he raised for the first time in his amended petition for writ of habeas corpus, are barred by the statute of limitations contained within 28 U.S.C. § 2244(d)(1), because the amended petition was filed more than one year after petitioner's conviction became final and the claims raised in the amended petition do not relate back to the claims raised by petitioner in the original habeas petition. (ECF No. 17, PageID. 2046-57).[2]  With the

---

[2]  A statute of limitations defense to a habeas petition is not "jurisdictional," thus, courts "are under no obligation to raise the time bar *sua sponte*." *Day v. McDonough*, 547 U.S. 198, 205 (2006). The fact that petitioner was granted permission to file his amended petition does not preclude respondent from raising a limitations defense to the claims raised in that petition. *See Quatrine v. Berghuis*, No. 2:10–CV–11603; 2014 WL 793626, * 2–3 (E.D. Mich. Feb. 27, 2014); *Soule v. Palmer*, No. 08–cv–13655; 2013 WL 450980, * 1–3 (E.D. Mich. Feb. 5, 2013). Although respondent could have filed an opposition to petitioner's motion to amend his petition, he was not required to do so under Fed.R.Civ.P. 8 until he filed an answer to the amended petition. *See Young v. Greiner*, No. 9:02–CV–1087; 2008 WL 5432219, * 9 (N.D.N.Y. Dec. 30, 2008).

exception of petitioner's first claim alleging a violation of his right to a public trial, this Court agrees.

In the statute of limitations context, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. New York*, 186 F.3d 243, 250 (2d Cir.1999); *See also Cooey v. Strickland,* 479 F. 3d 412, 415-16 (6th Cir. 2007).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one (1) year statute of limitations shall apply to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court.  The one-year statute of limitation shall run from the latest of:

    (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner's direct appeal of his conviction ended when the Michigan Supreme Court denied petitioner leave to appeal on September 12, 2017, following the affirmance of his conviction by the Michigan Court of Appeals on direct review. *People v. Johnson*, 501 Mich. 860, 901 N.W.2d 384 (2017).  Petitioner's conviction would become final, for the purposes of the AEDPA's limitations period, on the date that the 90-day time period for seeking certiorari with the U.S. Supreme Court expired. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).  Petitioner's judgment therefore became final on December 11, 2017, when he failed to file a petition for writ of certiorari with the U.S. Supreme Court. *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1188 (E.D. Mich. 2001).  Petitioner had until December 11, 2018 to file his habeas petition in compliance with the one-year limitations period, unless the limitations period was somehow tolled.

Petitioner filed his post-conviction motion for relief from judgment with the state trial court on November 19, 2018, after three hundred and forty-two days had already elapsed on the one year statute of limitations.  28 U.S.C. § 2244(d)(2) expressly provides that the time during which a properly filed application for state post-conviction relief or other collateral review is pending shall not be counted towards the period of limitations contained in the statute. *See McClendon v. Sherman,* 329 F.3d 490, 493-

94 (6th Cir. 2003).  A post-conviction application remains pending in the state courts, for purposes of § 2244(d)(2), until it "has achieved final resolution through the state's post-conviction procedures." *Carey v. Safford,* 536 U.S. 214, 220 (2002).  The tolling of the AEDPA's one year statute of limitations ended in this case when the Michigan Supreme Court denied petitioner's application for leave to appeal the denial of his motion for relief from judgment on June 30, 2020. *See Hudson v. Jones*, 35 F. Supp. 2d 986, 988-89 (E.D. Mich. 1999).  Petitioner had twenty-three days remaining under the statute of limitations, or until July 24, 2020, to timely file his habeas petition.

As mentioned above, petitioner's original habeas petition was timely filed because it was given to prison officials for mailing to this Court on July 24, 2020.  Respondent, at least for purposes of their current argument, does not dispute Judge Tarnow's finding concerning the timeliness of the original habeas petition, but argues that the five claims raised by petitioner for the first time in his amended petition are untimely because the amended petition was not filed until December 1, 2021, well after the expiration of the limitations period on July 24, 2020.

When a habeas petitioner files an original petition within the one-year deadline, and later presents new claims in an amended petition that is filed

- 12 -

after the deadline passes, the new claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Petitioner in his original habeas petition raised the following four claims which now constitute his sixth through ninth claims: (1) petitioner was denied a fair trial when evidence of his prior convictions was introduced into evidence through the information charging petitioner with being a habitual offender, (2) the habitual offender notice was untimely filed, (3) judicial misconduct, and (4) ineffective assistance of appellate counsel.  These claims are now Claims # 6-9 in the amended petition.  In his amended petition, petitioner for the first time raises these claims for relief: (1) petitioner was denied the right to a public trial, (2) there was insufficient evidence to convict, (3) the prosecutor introduced perjured testimony, (4) petitioner's constitutional right to be present at a hearing was violated, and (5) petitioner was denied his right to present a defense.

Petitioner in his original habeas petition argued that appellate counsel was ineffective for failing to call co-defendant Burney's mother to testify at the hearing on remand concerning the alleged violation of petitioner's right to a public trial by the closure of the courtroom.  Petitioner's first claim that he raises in his amended petition concerning the violation of his right to a

public trial share a common core of facts with the timely filed claim that appellate counsel was ineffective.  The Court declines to dismiss petitioner's public trial claim on statute of limitations grounds.

Petitioner's second through fifth claims that he raised for the first time in his amended habeas petition do not share a "common core of operative facts" with the claims raised in his timely filed original habeas petition. Because petitioner's second through fifth claims that he raised in the amended petition do not share a common core of operative facts with the claims raised in the original petition, these claims are barred by the one-year limitations period. *See Pinchon v. Myers,* 615 F.3d 631, 643 (6th Cir. 2010).

The AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).  A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." *See Robertson v. Simpson*, 624 F. 3d 781, 784 (6th Cir. 2010).  The burden is on a habeas petitioner to

- 14 -

show that he or she is entitled to the equitable tolling of the one-year

limitations period. *Id*. The petitioner is not entitled to equitable tolling of the

one-year limitations period for the time barred claims in his amended

petition, because he failed to argue or show that the facts of case support

equitable tolling. *See Giles v. Wolfenbarger,* 239 F. App'x 145, 147 (6th Cir.

2007).

The one-year statute of limitations may be equitably tolled based

upon a credible showing of actual innocence under the standard

enunciated in *Schup v. Delo,* 513 U.S. 298 (1995). *McQuiggin v. Perkins*,

569 U.S. 383, 386 (2013). The Supreme Court has cautioned that "tenable

actual-innocence gateway pleas are rare[.]" *Id.* "[A] petitioner does not

meet the threshold requirement unless he persuades the district court that,

in light of the new evidence, no juror, acting reasonably, would have voted

to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513

U.S., at 329). For an actual innocence exception to be credible under

*Schlup*, such a claim requires a habeas petitioner to support his or her

allegations of constitutional error "with new reliable evidence--whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner's case falls outside of the actual innocence tolling exception, because he presented no new, reliable evidence to establish that he was actually innocent of the crimes charged. *See Ross v. Berghuis,* 417 F. 3d 552, 556 (6th Cir. 2005). Petitioner's second through fifth claims are barred by the statute of limitations.

**B. Claim # 1.  The public trial claim.**

Petitioner in his first claim argues that his right to a public trial was violated by the closure of the courtroom during the testimony of a witness.

Respondent contends that petitioner's claim is waived or procedurally defaulted because petitioner failed to object at trial.

"The central aim of a criminal proceeding must be to try the accused fairly." *Waller v. Georgia*, 467 U.S. 39, 46 (1984).  The Sixth Amendment public-trial guarantee was created to further that aim. *Id.* (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)).  A public trial helps to ensure that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. *Id.*  A closure of a criminal proceeding does not violate the Sixth Amendment right to a public trial where: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates that the closure is no broader than

necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure. *Waller*, 467 U.S. at 48.  The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis. *Id.* at 49-50, n. 9.

Although the right to a public trial is a fundamental right, it can also be waived if a habeas petitioner either acquiesces to the closure of the courtroom or fails to object. *See Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009)(citing *Freytag v. Commissioner*, 501 U.S. 868, 896 (1991)("[T]he Sixth Amendment right to a trial that is 'public,' provide[s] benefits to the entire society more important than many structural guarantees; but if the litigant does not assert [it] in a timely fashion, he is foreclosed."); *Peretz v. United States*, 501 U.S. 923, 936–37 (1991)(citing *Levine v. United States*, 362 U.S. 610, 619 (1960)).  The fact that the denial of the right to a public trial is a structural error does not mean than the claim cannot be waived by petitioner's failure to object.  Although structural errors are presumed to be prejudicial and thus not subject to harmless error review, such errors are nevertheless subject to the general rules of waiver, forfeiture, and default. *See Johnson v. United States*, 520 U.S. 461, 466 (1997)(waived or forfeited structural error subject to plain error review under Fed. R.Crim. P.

52(b)).  *See also United States v. Suescun*, 237 F.3d 1284, 1288, n. 12

(11th Cir. 2001)("Structural defects do not absolve a defendant's waiver of

a defense or objection.").  Petitioner's failure to object to the closure of the

courtroom for a portion of the trial waives federal habeas review of his

public trial claim. *Johnson,* 586 F.3d at 444.  Even though one of

petitioner's co-defendants objected to the closure of the courtroom,

petitioner waived the issue because his counsel did not object. *See United*

*States v. Acosta-Colon*, 741 F.3d 179, 187 (1st Cir. 2013).

In any event, assuming that the claim was not waived, petitioner

would nonetheless not be entitled to habeas relief.  The Michigan Court of

Appeals on remand reasonably rejected petitioner's claim at great length:

> At the remand hearing, several witnesses testified concerning
> the closure of the court during defendants' trial on April 30,
> 2015. Ms. Casper, the prosecutor who represented the people
> at the trial, testified that prior to trial and after the preliminary
> examination, one of the testifying witnesses (Demond's uncle)
> was the victim of a shooting. Based upon recorded jail
> telephone calls, she believes that the shooting was related to
> the case. Another witness did not want to testify, expressing
> "concern" because she knew defendants and their friends. Ms.
> Casper testified that Demond was concerned about testifying
> as well and claimed that acquaintances of at least one of the
> defendants were hanging around his home. As to what
> transpired during trial with relation to Demond, Ms. Casper
> testified that he was being cross-examined by one of
> defendant's counsel when a few people walked into the
> courtroom and sat in the gallery area behind defendants.
> Demond looked into the gallery behind where defendants were
> seated and suddenly ran off the stand. According to Ms.

Casper, the judge immediately had the jury taken out of the courtroom and almost simultaneously, deputies removed people from the gallery area behind defendants. She did not recall anyone that had sat on the prosecution's side of the gallery being escorted out or removed from the courtroom. Ms. Casper was permitted to speak to Demond after he left the stand and, as he cried, he told her that he was terrified of one of the men who had walked in and sat behind the defense table, who he identified as "Nate." Ms. Casper recognized Nate's name from calls that had been placed from the jail during which intimidation of the prosecution's witnesses had been discussed. Demond eventually agreed to go back to the stand and testify for his brother, Jamil, who had been shot by defendants.

Ms. Casper testified that the court recessed for lunch to allow things to calm down and when the trial resumed Demond returned to the witness stand to testify, although he was still visibly upset and crying. According to Ms. Casper, the courtroom was not closed when the trial resumed. Ms. Casper testified that the deputies were given a description of the individuals who had come in when Demond ran off the witness stand to keep them out of the courtroom. Ms. Casper testified that this case stood out to her because she had such a difficult time with the witness issues and she was trying the case by herself, with no second chair. Due to the witness difficulties, her colleagues were continuously coming in to check on her, and officers were checking in as well. Ms. Casper testified that she kept her eye on the gallery at all times due to threats to the witnesses and had the court been closed, she would have noticed an absence of people in the gallery. Her recollection is that there were always a couple of people in the gallery, some of whom she did not know, and that the courtroom thus could not have been completely closed. She further recalled the name of a specific civilian who had tried to come in the courtroom to watch the testimony, but whom the judge made leave in case he had to be recalled as a witness, again indicating to her that the courtroom had not been completely closed.

Ms. Casper further testified that one of the defendant's mothers was one of the persons initially escorted out of the courtroom, but that she was allowed to return at some point. Ms. Casper testified that when Nate and others entered the courtroom, they sat in the mother's vicinity, behind defendants, and at the point when Demond rushed off the witness stand; no one was entirely sure why he had suddenly become so upset. Thus, they felt it was best to escort everyone that had been in the direction in which Demond had looked out of the courtroom until the matter was sorted out.

Defendant Brown testified at the hearing that his mother and several more of his family members were present at his trial on April 30, 2015. Brown testified that at some point during the morning his family was escorted out of the courtroom, though they had done nothing to disrupt the courtroom and that he did not see them in the afternoon when his trial resumed. Brown testified that when his trial resumed the next day, his family members were present in the courtroom. Brown's trial attorney, David Cripps, testified that after Demond ran off the stand, he believes the trial court issued an order closing the courtroom to the public for the day.

Defendant Johnson likewise testified that during his trial on April 30, 2015, his family members and friends were escorted out of the courtroom. He did not see them when the trial resumed that afternoon. Rhonda Johnson, defendant Johnson's sister, testified that she was present for her brother's trial on April 30, 2015, and when a witness walked off the stand, she and the rest of the people in the gallery on the defendant's side were escorted out of the courtroom by a deputy. She testified that she was not allowed back into the courtroom that day, but did come back on later days. Johnson's trial counsel, Arnold Weiner, testified that when a witness unexpectedly left the stand, he recalls that the trial judge adjourned the matter for a period of time, but could not recall if the courtroom was cleared of the public at any time.

Evan Callahan, trial counsel for defendant Burney, testified that when Demond left the witness stand during his testimony,

Burney's mother was escorted out of the courtroom. Callahan objected to her removal and asked that she be allowed back in, and he believes she was thereafter allowed to stay in the courtroom. Callahan could not recall if the courtroom was ultimately cleared.

After the witnesses concluded testifying, the trial judge referred back to the trial transcript and indicated that he had stated that he was leaving the court closed until Demond had finished testifying, indicating that his closure was clearly just a partial closing. The trial judge stated that his reason for the closure was for the protection of the witness as well as for the efficient running of the trial, given that the jury had witnessed everything that the judge, the lawyers, and the defendants had observed.

The hearing record satisfactorily establishes that the closure in this case was partial, rather than total. "A partial closure occurs where the public is only partially excluded, such as when family members or the press are allowed to remain, or when the closure order is narrowly tailored to specific needs." *People v. Kline*, 197 Mich. App. 165, 170 n 2; 494 N.W.2d 756 (1992)(internal citation omitted). It appears undisputed that only those associated with defendants were cleared from the courtroom. Moreover, the courtroom was cleared of those associated with defendants only during Demond's testimony. While Rhonda Johnson testified that after Demond testified she was not allowed back in the courtroom, there is no indication that she attempted to go back into the courtroom and was denied entry. And, there was testimony that at least one defendant's mother was allowed back into the court later in the day and that one witness came back into the courtroom but was asked to leave because he may have been potentially recalled as a witness. The above testimony, as well as the trial judge's statement that he only partially closed the courtroom, is sufficient to establish that the court room was only partially closed.

The articulated reasons for the closure, for the safety of the testifying witness and efficient running of the trial, were substantial enough to justify the partial closure. Demond was

clearly shaken by the appearance of a person in the gallery—to the extent that he disrupted the trial. He expressed concern for his safety and Ms. Casper recognized the name of the person who caused Demond fear as a person who had been named or involved in recorded jailhouse threats toward Demond and other prosecution witnesses.

At the conclusion of the evidentiary hearing, the trial court specifically addressed the four factors applicable to the closure of court proceedings set forth in *Kline*, 197 Mich. App. at 169. As to the first factor, that the closure need address an overriding interest that is likely to be prejudiced, the trial court again indicated that the safety of a witness was at stake and required the partial closure. We agree that this interest was sufficient to justify the partial closure.

The second *Kline* factor requires that the closure be no broader than necessary. *Id.* We agree with the trial court that the closure of the court only while the one witness was testifying was limited and thus not broader than necessary to protect the safety of the testifying witness. With respect to the third factor, the consideration of any reasonable alternatives to the partial closure, the trial judge admitted that he struggled with that factor. He stated that the partial closure was actually begun by deputies trying to control people coming in and out of the courtroom when Demond "astonishingly" just got up and left the stand. The trial judge stated that his concern was that the jury was sheltered from any interaction between witnesses, the deputies, and spectators, so that no prejudice to the defendants occurred and he saw no real alternative but to partially close the courtroom, given that the fear from the witness was happening ten feet away from the jury. Given the unpredictable nature of this occurrence, the speed at which it occurred, and Demond's continued expression of fear, we find that the trial court's determination of no reasonable alternative to a partial closure of the courtroom was sound. Finally, we find that the trial court's articulation on the record of its findings is adequate to support its partial closure of the courtroom, thus satisfying the fourth *Kline* requirement. *Id.*

*People v. Brown,* 2017 WL 1367178, at *2-4.

The Sixth Circuit has observed, "[n]early all federal courts of appeals ... have distinguished between the total closure of proceedings and situations in which a courtroom is only partially closed to certain spectators." *United States v. Simmons*, 797 F.3d 409, 413 (6th Cir. 2015). In addition, "[a]ll federal courts of appeals that have distinguished between partial closures and total closures modify the *Waller test* so that the "overriding interest" requirement is replaced by requiring a showing of a "substantial reason" for a partial closure, but the other three factors remain the same." *Id*., at 414.

The fact that the Sixth Circuit and other federal circuit courts have modified the *Waller* test when there is only a partial closure of a courtroom demonstrates that the Supreme Court's holding in *Waller* only applies to full courtroom closures. *See Drummond v. Houk*, 797 F.3d 400, 403 (6th Cir. 2015)("There is no clearly established Supreme Court law as to how the rules in *Waller* apply in cases, like Petitioner's, where some spectators, but not all of them, were removed from the courtroom"). The Michigan Court of Appeals reasonably determined that the state trial court's partial closure of the courtroom to remove family members during the testimony of one witness after there had been threats and an altercation did not violate

petitioner's right to a public trial, because the trial court offered substantial reasons for the partial closure, which was limited in scope to those reasons. *Drummond,* 797 F. 3d at 401-02, 404 (upholding partial closure of courtroom where one spectator was disrespectful to the deputies and to the court, another was charged with assault on a peace officer after an altercation in the courthouse, and some jurors or witnesses felt threatened by some of the spectators).  Petitioner is not entitled to habeas relief on his first claim.

### C. Claim # 6. The admission of petitioner's prior convictions.

Petitioner in his sixth claim alleges that he was denied a fair trial when the jury was provided with a copy of the felony information, which contained his fourth habitual offender notice and listed his prior convictions.[3]

Petitioner is not entitled to habeas relief for two reasons.

---

[3] Respondent urges this Court to procedurally default petitioner's remaining claims because petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise them on his appeal of right.  Petitioner argues in his ninth claim that appellate counsel was ineffective for failing to raise his sixth through eighth claims on his appeal of right.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of the defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).  Petitioner could not procedurally default his ineffective assistance of appellate counsel claim because post-conviction review was the first opportunity he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

First, petitioner has presented no evidence to this Court that the felony information charging him with being a habitual offender was submitted to the jury.

Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir. 2006)(bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998)(conclusory allegation of ineffective assistance of appellate counsel did not support granting habeas relief).

In addition, it is unclear why the prosecutor would introduce any information charging petitioner with being a habitual offender at his jury trial because a criminal defendant's status as a habitual offender is no longer determined by the jury at a trial. Before its amendment in 1994, Mich. Comp. Laws § 769.13 provided a statutory right for a jury trial for defendants who were charged with being a habitual offender. Effective May 1, 1994, the procedure for enhancing a habitual offender sentence was changed. Under Mich. Comp. Laws § 769.13, as amended, a defendant is no longer entitled to a jury trial on a habitual offender charge. *People v. Zinn*, 217 Mich. App. 340, 344-345; 551 N. W. 2d 704 (1996).

The Michigan Court of Appeals indicated that the language of the amended statute reaffirmed the "long-held legislative intent" that habitual offender statutes are merely sentence enhancement mechanisms, rather than substantive crimes. *Id.* at 347; *See also People v. Anderson*, 210 Mich. App. 295, 297-298; 532 N. W. 2d 918 (1995)(habitual offender statute does not create a substantive offense that is separate from and independent of the principal charge).  Thus, a defendant in Michigan is no longer entitled to a trial by jury or the right to be proven guilty beyond a reasonable doubt on a habitual offender charge. *People v. Zinn,* 217 Mich. App. at 347.  Thus, there would be no basis for petitioner's prior convictions to be introduced before the jury.

Secondly, assuming that petitioner's prior convictions were improperly admitted, petitioner failed to cite to any Supreme Court precedent that would prevent the admission of his prior convictions into evidence at his trial.  In *Spencer v. State of Texas,* 385 U.S. 554 (1967), the United States Supreme Court held that Texas's procedure for prosecuting habitual offenders by listing the prior convictions in the indictment and introducing evidence of those prior convictions at a single trial did not violate the Due Process Clause. *Spencer v. State of Tex.*, 385 U.S. 554, 566 (1967). The Supreme Court also held that Due Process

Clause does not require a two-stage jury trial to first determine the guilt of

the defendant to the underlying charge and secondly to determine whether

the defendant is guilty of being a habitual offender. *Id.* at 567-68.  The Sixth

Circuit, based on the holding in *Smith,* ruled that the reading of an

indictment to a jury concerning the counts being charged as substantive

offenses and the habitual offender charges and allowing the introduction of

the habeas petitioner's prior convictions at trial could not provide a basis for

habeas relief. *See Haggard v. Henderson*, 382 F.2d 288, 289 (6th Cir.

1967); *See also Lonberger v. Jago*, 635 F.2d 1189, 1192 (6th Cir.

1980)(One-stage trial in which evidence of a prior conviction was

introduced solely on the issue of enhanced punishment conformed with

Ohio's rules of evidence and criminal procedure and could not provide a

basis for habeas relief); *reversed on other grounds*, *Marshall v. Lonberger*,

459 U.S. 422 (1983).  Accordingly, the alleged admission of petitioner's

prior convictions in a felony information at trial would not entitle him to

habeas relief.

### D. Claim # 7. The untimely supplemental information claim.

Petitioner argues that the habitual offender charges are invalid

because the habitual offender notice was not filed within twenty-one days

of the arraignment on the information, as required by Mich. Comp. Laws §
769.13.

Petitioner's claim involving the application of Michigan's habitual
offender laws is non-cognizable on habeas review, because it involves an
application of state law. *See Rodriguez v. Jones,* 625 F. Supp. 2d 552, 569
(E.D. Mich. 2009); *Grays v. Lafler*, 618 F. Supp. 2d 736, 751 (W.D. Mich.
2008). Petitioner's claim that he received inadequate notice of the habitual
offender charge under Michigan law thus does not state a claim that is
cognizable in federal habeas review. *See Tolbert v. LeCureaux,* 811 F.
Supp. 1237, 1240-41 (E.D. Mich. 1993). Due process does not require
advance notice that a trial on a substantive criminal charge will be followed
by a habitual offender charge. Due process only requires that a defendant
be given a reasonable notice and opportunity to be heard relative to the
habitual offender charge. *Oyler v. Boles,* 368 U.S. 448, 452 (1962).

Petitioner did not dispute, either at his trial, sentencing, or more
importantly, in his habeas petition, that he had prior convictions that would
make him eligible to be sentenced as a habitual offender, nor did he object
or seek a continuance based on the absence of advance notice of the
sentence enhancement. Therefore, petitioner cannot complain that he was
denied due process. *Oyler,* 368 U.S. at 453-54.

- 28 -

More importantly, petitioner's claim is without merit. Mich. Comp. Laws § 769.13 contemplates two different dates for measuring the timeliness of the filing of the habitual offender notice: (1) "21 days after the defendant's arraignment on the information charging the underlying offense" or (2) "if arraignment is waived, within 21 days after the filing of the information charging the underlying offense."  Numerous Michigan cases have held, however, that a habitual offender notice is timely and valid if filed prior to the arraignment on the information. *See People v. Hornsby*, 251 Mich. App. 462, 469-70, 472, 650 N.W.2d 700, 705 (2002); *People v. Woods*, No. 322608, 2016 WL 232316, at * 6 (Mich. Ct. App. Jan. 19, 2016), *People v. Davis*, No. 318059, 2015 WL 501928, at * 6, n. 20 (Mich. Ct. App. Feb. 5, 2015); *People v. Swift*, No. 318680, 2015 WL 728552, at * 2 (Mich. Ct. App. Feb. 19, 2015); *People v. Brown,* No. 255255, 2006 WL 1006558, at * 3 (Mich. Ct. App. Apr. 18, 2006).

The judge on post-conviction review rejected petitioner's claim, finding that the habitual offender notice was timely because it was filed on December 6, 2014, which was prior to petitioner being arraigned in the circuit court on January 23, 2015. *People v. Johnson,* No. 15-000469-01-FC, * 4 (ECF No. 8-13, PageID. 1291).

The habitual offender notice was filed with the state district court on

December 6, 2014, before petitioner was even arraigned in the circuit court.

(ECF No. 1, PageID. 88-89). In the present case, the habitual offender

notice was valid and timely in that it was filed prior to the arraignment on

the information.  Accordingly, petitioner is not entitled to relief on his

seventh claim.

### E. Claim # 8.  The judicial misconduct claim.

Petitioner next claims that the trial judge engaged in misconduct by

questioning Jamil Dismuke.

The Due Process Clause of the Fourteenth Amendment requires a

fair trial in a fair tribunal before a judge with no actual bias against the

defendant or an interest in the outcome of the case. *See Bracy v. Gramley*,

520 U.S. 899, 904-05 (1997).  The right to an impartial judge is a right

whose deprivation a state prisoner may complain of in a federal habeas

corpus proceeding. *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995)(citing

to *Turner v. Ohio*, 273 U.S. 510, 523 (1927); *In Re Murchison*, 349 U.S.

133 (1955)).  Trial judges have a wide latitude in conducting trials, but they

must preserve an attitude of impartiality and scrupulously avoid giving the

jury the impression that the judge believes that the defendant is guilty.

*Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

However, in reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown v. Palmer,* 358 F. Supp. 2d at 657.  To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657.  A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657.  The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).  "A judge's ordinary

efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.*

Petitioner claims that the judge engaged in misconduct by questioning Mr. Dismuke at great length concerning his identification of the perpetrators and other observations concerning the crime. (ECF No. 8-7, PageID. 937-943).

A trial judge may interject himself or herself "into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation." *United States v. Powers*, 500 F.3d 500, 511 (6th Cir. 2007).  In the present case, the trial court judge interjected himself only to clarify Mr. Dismuke's testimony.  It is not unconstitutional under the Due Process Clause for a state trial judge to seek clarification from witnesses at a criminal trial. *Brown v. Palmer,* 358 F. Supp. 2d at 657; *See also Wenglikowski v. Jones,* 306 F. Supp. 2d 688, 695 (E.D. Mich. 2004).  "In fact, it is proper for a judge to question a witness when necessary either to elicit the truth or to clarify testimony." *Brown,* 358 F. Supp. 2d at 657.  Because the trial court judge's questions were proper, petitioner is not entitled to habeas relief.

Finally, any prejudice from the judge's questions was also cured by the fact that the judge instructed the jury that his comments, rulings, and

instructions were not evidence and further advised the jurors that if they believed that the judge had an opinion about how they should decide the case, that they should disregard that opinion and that they were the only judges of the facts. (ECF No. 8-9, PageID. 1103). *See Todd v. Stegal,* 40 F. App'x. 25, 28 (6th Cir. 2002).  Petitioner is not entitled to relief on his eighth claim.

### F. Claim # 9.  The ineffective assistance of appellate counsel claim.

Petitioner alleges that appellate counsel was ineffective.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on appeals of right, s*ee Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985), and on first-tier discretionary appeals. *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005).  Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016)(per curiam).

Petitioner first claims that appellate counsel should have called Toya Ward, co-defendant Burney's mother, to testify at the hearing on remand where the trial court ultimately determined that the closure of the courtroom was partial and justified by threats made by the spectators.  Petitioner has attached an affidavit from Ms. Ward. (ECF No. 16-1, PageID. 2016).  Ms. Ward avers that on Friday, April 30, 2015 there was an altercation at the trial and that she was directed to leave the courtroom at around 10:30 a.m. and was not permitted to return to the court for the morning session.  Ms. Ward stated she wanted to be in court to provide moral support for her son but was not permitted to return to the court until the following Monday morning. Ms. Ward indicated she wanted to testify at the post-trial court hearing on remand concerning the courtroom closure.

It was uncontroverted both on the original appeal, at the remand hearing, and in the appeal after remand that Ms. Ward and other family members had been asked to leave the courtroom.  Ms. Ward's testimony, in fact, would have been cumulative of other witnesses who testified at the evidentiary hearing on remand.  Ms. Ward's testimony, if anything, supported the trial and appellate court's finding that the courtroom closure was not a complete closure but only a partial closure that was justified by

threats and disruptions from the spectators. As such, petitioner was not prejudiced by appellate counsel's failure to call Ms. Ward as a witness, because he failed to show that the outcome of his public trial claim on appeal would have been different had he called her to testify at the hearing. *See, e.g., Tucker v. Superintendent Graterford SCI*, 677 F. App'x 768, 777-79 (3d Cir. 2017).

Petitioner next claims that appellate counsel was ineffective for failing to raise his sixth through eighth claims on his appeal of right. This Court has determined that these claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner is not entitled to habeas relief on his ninth claim.

**G. The motion for the appointment of counsel is denied.**

Petitioner filed a motion for the appointment of counsel.

There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess,* 306 F. 3d 441, 444 (6th Cir. 2002). Because petitioner's claims lack any merit or are time-barred, the Court will deny petitioner's request for the appointment of counsel. *See Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004).

## IV. CONCLUSION

The petition for writ of habeas corpus is denied with prejudice.

The Court denies a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court denies petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right.  However, although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that the motion for the appointment of counsel is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED**.

IT IS FURTHER ORDERED that Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

Dated:  April 12, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 12, 2022, by electronic and/or ordinary mail and also on
Teri Bernard Johnson #457157, Carson City Correctional
Facility, 10274 Boyer Road, Carson City, MI 48811.

s/Brianna Sauve
Deputy Clerk

---

- 38 -